Doris **KESLER–FERGUSON** and Boyd Ferguson, Respondents,

v.

**HY–VEE, INC.,** Appellant.

No. SC 89315.

Supreme Court of Missouri, En Banc.

Dec. 16, 2008.

Mark G. Arnold, Joshua M. Ellwanger, Kathryn G. Lee, Husch Blackwell Sanders LLP, Kansas City, MO, for Appellee.

Charles H. McKenzie, Louis C. Accurso, The Accurso Law Firm, Kansas City, MO, for Respondent.

ZEL M. FISCHER, Judge.

Hy–Vee, Inc., appeals the circuit court's judgment following a jury verdict awarding $212,400 to Doris Kesler–Ferguson ("Kesler") on her claims for negligence and premise liability against Hy–Vee. On appeal, Hy–Vee claims that the circuit court erred in sustaining Kesler's challenge under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to Hy–

Vee's use of a peremptory strike against an African–American venireperson. This Court now considers whether the circuit court erred in sustaining Kesler's *Batson* challenge.

## Facts

This appeal originates out of a suit brought by Kesler and her husband for a slip and fall accident that occurred at a Hy–Vee store in Belton, Missouri. During jury selection, Hy–Vee used its three peremptory strikes to remove three African–Americans from the venire panel. Kesler alleged these strikes were racially motivated and challenged them pursuant to *Batson*.

In response to the *Batson* challenge, the circuit court asked Hy–Vee to provide a race-neutral explanation for the strikes. The circuit court overruled the *Batson* challenges to Venirepersons No. 8 and No. 9, but sustained the *Batson* challenge to Venireperson No. 26. Hy–Vee's explanation for striking Venireperson No. 26 was that he knew another member of the venire. After the jury rendered a verdict against it, Hy–Vee filed a motion for new trial alleging that the circuit court erred in sustaining Kesler's *Batson* challenge. The circuit court overruled the motion.

## Analysis

Hy–Vee's four points on appeal allege that the circuit court erred in sustaining the Kesler's *Batson* challenge to Hy–Vee's peremptory strike of Venireperson No. 26 because: (1) the circuit court applied the wrong standard in that Hy–Vee was required to offer more than a race-neutral explanation for its strike; (2) it misapplied the standard for finding that Hy–Vee's strike was racially motivated; (3) it improperly placed the burden of persuasion on Hy–Vee by requiring Hy–Vee to justify its strike with a race-neutral explanation;

and (4) Kesler did not prove invidious discrimination. Because Hy–Vee's four points are interrelated, discussion of them is combined.

■ In reviewing a circuit court's decision concerning a *Batson* challenge, a circuit court is accorded great deference because its findings of fact largely depend on its evaluation of credibility and demeanor. *Benedict v. Northern Pipeline Const.,* 44 S.W.3d 410, 420 (Mo.App.2001). This Court, then, will reverse the circuit court's decision only if it is clearly erroneous. *Id.* For the circuit court's decision to be clearly erroneous, this Court must have a definite and firm conviction that a mistake was made. *Id.*

■ The issue of whether the circuit court applied the correct legal standard is a question of law that is reviewed de novo. *State v. Rousan,* 961 S.W.2d 831, 845 (Mo. banc 1998).

Pursuant to section 494.480.1, RSMo 2000, civil litigants are entitled to strike three jurors peremptorily. The United States Supreme Court has declared that the equal protection clause of the Fourteenth Amendment to the United States Constitution is violated when the courts permit a litigant to use a peremptory strike to remove a venireperson solely on the basis of gender, ethnic origin, or race. *United States v. Martinez–Salazar,* 528 U.S. 304, 315, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000). This prohibition was extended to civil trials in *Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 631, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

■ Missouri has adopted the three-step process for *Batson* challenges. *E.g., State v. Marlowe,* 89 S.W.3d 464, 468–70 (Mo. banc 2002). In *Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), the United States Supreme Court described those three steps:

Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facia case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.

■ In the third step, the circuit court may consider the credibility and demeanor of reasons proffered to support striking a member of the venire. *State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992). "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769.

■ Hy–Vee used a peremptory strike to remove Venireperson No. 26. Kesler objected and claimed that the strike violated *Batson* because Venireperson No. 26 was African–American. Hy–Vee concedes this was sufficient to satisfy the first step of the *Batson* process.

For the second step, Hy–Vee's attorney stated he used the strike to remove Venireperson No. 26 because, "[He] had an affiliation with [Venireperson] No. 31. And frankly, it was just kind of a toss up there." Hy–Vee's attorney further added, "[Venireperson No. 26 is] the fellow, Judge, that had a relationship with Juror 31. That made us a little uncomfortable. He dated her friend, Your Honor. I think that's the same guy."

■ The circuit court, in considering the third step of the *Batson* analysis, can look at the totality of the circumstances. *Parker,* 836 S.W.2d at 939 (citing *State v. Antwine,* 743 S.W.2d 51, 65 (Mo. banc 1987)). Furthermore, it is important to note that the trial court is in a better position than this Court to observe the sincerity and credibility of trial counsel and also to observe the racial makeup of the jury panel. *Benedict,* 44 S.W.3d at 420. For those reasons, this Court relies on the trial court to consider the plausibility of the striking party's explanations in light of the totality of the facts and circumstances surrounding the case. *Id.*

A number of factors have been set forth by case law for determining whether a *Batson* challenge should be sustained, including: (1) the degree of logical relevance between the explanation and the case to be tried in terms of the nature of the case and the types of evidence adduced; (2) the striking attorney's demeanor or statements during *voir dire;* and (3) the trial court's past experience with the striking attorney. *Id.*

■ Hy–Vee may have provided a race-neutral explanation in step two, but in step three, the trial court in sustaining the *Batson* challenge found that the strike was racially motivated.[1] The record supports the trial court's sustaining the *Batson* challenge because: (1) Hy–Vee stated the reason for the strike was because two potential jurors knew each other, but both jurors said the acquaintance would not affect them in any way; (2) Hy–Vee claimed it was concerned about the acquaintance, yet it asked no questions about the acquaintance during *voir dire;*[2] (3) Hy–Vee

1. The case law points out that in sustaining a *Batson* challenge, the circuit court implicitly is making a finding that the explanations for the preemptory strike is not credible. *Benedict,* 44 S.W.3d at 421.

2. The failure to engage in any meaningful *voir dire* examination on a subject a party alleges it is concerned about is evidence suggesting that the explanation for the strike is a sham and a pretext for discrimination. *State v. McFadden,* 191 S.W.3d 648, 654 (Mo. banc

claims that its strikes were not racially motivated, yet it used all three of its peremptory strikes for the main panel to strike African–Americans; (4) Hy–Vee claims that the acquaintance was genuinely the reason for the strike, yet there was a long delay and a pause while Hy–Vee tried to articulate a reason for its strike;[3] (5) Hy–Vee claims that the acquaintance was genuinely the reason for the strike, yet at one point Hy–Vee's counsel could not even remember if he was striking the correct venireperson;[4] and (6) Hy–Vee claims the three strikes were not racially motivated, yet the only strike not directed at a black individual was from a pool left for alternate jurors that had only white people in it.

Hy–Vee also argues that the circuit court, like the trial court in *Purkett*, applied the wrong standard because it required Hy–Vee to give more than a race-neutral reason to meet its burden for step two of the *Batson* procedure. However, because of the difference in the factual underpinnings of *Purkett* and this case, Hy–Vee misconstrues the holding in *Purkett* when it argues the circuit court applied the wrong standard because it required Hy–Vee to give more than a race-neutral standard.

Furthermore, the analysis applied in *Purkett* is distinguishable from the case at hand because in *Purkett*, the circuit court overruled the *Batson* challenge, whereas in this case, the circuit court sustained the *Batson* challenge. *Purkett* does not hold that a circuit court is not permitted to consider the implausibility of the rationale when making the ultimate determination as to whether a peremptory strike will be

permitted. In fact, the Court in *Purkett* recognized this consideration when it stated, "But to say that a trial judge may choose to disbelieve a silly or superstitious reason at step three is quite different from saying that a trial judge must terminate the inquiry at step two when the race-neutral reason is silly or superstitious." 514 U.S. at 768, 115 S.Ct. 1769. In other words, the circuit court is not prohibited from making a credibility determination at stage three of the analysis. To the contrary, if a race-neutral reason is given for step two, as was given here, the circuit court, then, in step three must make a credibility determination as to whether the proffered reason was valid or was a mere pretext for discrimination. This determination is made considering the totality of all the relevant factors, and this is exactly what the circuit court did in this case.

Finally, Hy–Vee argues the record only supports a conclusion that the circuit court stopped at step two and never considered step three of the analysis. This argument ignores two important points. First, the circuit court overruled the other two *Batson* challenges to Venirepersons No. 8 and No. 9. So the circuit court, in considering all three *Batson* challenges, had to have reached step three of the *Batson* analysis. Second, the United States Supreme Court and this Court have both recognized that a trial court is free to disbelieve an alleged race-neutral explanation as mere pretext for discrimination. *Id. See also Parker*, 836 S.W.2d at 934.

The *Batson* challenge in this case, which was sustained by the trial court, is sup-

---

2006). *See also State v. Hopkins,* 140 S.W.3d 143, 149–50 (Mo.App.2004).

**3.** This comment concerning the record was made by Kesler's counsel in the brief and oral argument and not disputed by Hy–Vee's coun-

sel. Before giving any reason for the strike, HyVee's counsel paused and finally answered, "No. 26, oh yeah ..."

**4.** Counsel stated, "He dated her friend, Your Honor. I think that's the same guy."

ported by the record; accordingly, the judgment is affirmed.

STITH, C.J., PRICE, TEITELMAN, RUSSELL and WOLFF, JJ., and SCOTT, Sp.J., concur. BRECKENRIDGE, J., not participating.