**Marjorie GOODMAN and Bradley
Goodman, Appellants–
Respondents,**

v.

**HOLLY ANGLE, LMT, Respondent–
Appellant.**

**Nos. WD 72602, WD 72915.**

Missouri Court of Appeals,
Western District.

June 21, 2011.

Stephen R. Bough, Kansas City, MO, for Appellant–Respondents.

Matthew B. Heath, Kansas City, MO, Michael W. Blanton, Leawood, KS, Co–Counsel for Appellant–Respondent.

John R. Weist, Overland Park, KS, for Respondent–Appellant.

Before GARY D. WITT, P.J., JAMES EDWARD WELSH, and ALOK AHUJA, JJ.

JAMES EDWARD WELSH, Judge.

Marjorie Goodman and Bradley Goodman ("the Goodmans") appeal the circuit court's judgment following a jury verdict in favor of Holly Angle, LMT, on the Goodmans' negligence and loss of consortium claims against Angle. The Goodmans claim that the circuit court clearly erred in

overruling their *Batson*[1] challenges to Angle's use of her peremptory strikes against three minority venirepersons. The Goodmans also claim that the circuit court abused its discretion in refusing to allow them to cross-examine Angle about collateral issues that they contend would have impeached her credibility. Angle filed a cross-appeal, which is contingent upon our reversing and remanding for a new trial. Because we find no merit in the Goodmans' points on appeal, we affirm the circuit court's judgment and deny as moot Angle's cross-appeal.

In their lawsuit against Angle, the Goodmans alleged that, on May 8, 2006, Angle, a licensed massage therapist, was performing massage therapy on Marjorie.[2] During the massage, Marjorie began to have severe burning in her arms and loss of sensation below the armpits and was unable to move her legs. Marjorie was taken by ambulance to Truman Medical Center, where doctors discovered that she had a ruptured disc at the base of her neck. The ruptured disc caused her to have temporary paralysis. Marjorie underwent surgery and rehabilitative care.

The Goodmans filed their suit against Angle on April 29, 2008. The Goodmans claimed that Angle was negligent for, among other things, failing to properly perform therapeutic massage on Marjorie; failing to properly treat Marjorie's physical condition; failing to get Marjorie emergency medical care and treatment; and failing to properly perform a patient history to determine if Marjorie was a candidate for massage services. Alternatively, the Goodmans asserted that Angle was negligent under a theory of *res ipsa loquitur.*

The Goodmans contended that Angle's negligence directly and proximately caused Marjorie to suffer severe pain, numbness, weakness, the inability to use her lower extremities, abnormalities of bowel and bladder functions, and tremors. The Goodmans further alleged that Marjorie had suffered and would suffer great mental and physical pain, expenses for medical care and treatment, and economic loss. The Goodmans also sought damages for Bradley's loss of consortium.

A jury trial was held in April 2010. The jury found in favor of Angle on all counts. The Goodmans appeal.

■■■ In their first point on appeal, the Goodmans claim that the circuit court erred in overruling their *Batson* challenges against Angle's use of her peremptory strikes to remove three minority venirepersons. When reviewing a ruling on a *Batson* challenge, we accord the circuit court "great deference because its findings of fact largely depend on its evaluation of credibility and demeanor." *Kesler–Ferguson v. Hy–Vee, Inc.*, 271 S.W.3d 556, 558 (Mo. banc 2008). We will reverse the circuit court's decision only if it is clearly erroneous. *Id.* To find that the decision is clearly erroneous, we "must have a definite and firm conviction that a mistake was made." *Id.*

■■■ Missouri has a three-step procedure for resolving a *Batson* challenge. *Id.* In the first step, the party challenging the strike must object and make a *prima facie* case of racial discrimination by identifying the protected class to which the potential juror belongs. *Id.* at 559; *State v. Bateman*, 318 S.W.3d 681, 689 (Mo. banc 2010), *cert. denied*, —— U.S. ——, 131 S.Ct. 927,

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. Due to the appellants' shared last name, we will occasionally refer to Bradley Goodman and Marjorie Goodman by their first names. No familiarity is intended.

178 L.Ed.2d 772 (2011). In the second step, the proponent of the strike must present a specific and clear race-neutral reason for the strike. *Id.* "The second step of this process does not demand an explanation that is persuasive, or even plausible." *Purkett v. Elem,* 514 U.S. 765, 767–68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The sole issue at this stage is the facial validity of the explanation. *Id.* at 768, 115 S.Ct. 1769. Unless a discriminatory intent is inherent in the reason given, the circuit court should deem the reason to be neutral. *Id.*

■ If the proponent of the strike articulates an acceptable non-discriminatory reason for the strike, then, at the conclusion of the third step, the circuit court must decide whether the party challenging the strike "has proved purposeful racial discrimination." *Id.* at 767, 115 S.Ct. 1769. To prove purposeful racial discrimination, the party challenging the strike must demonstrate that the proffered reason for the strike was merely pretextual and that the strike was, in fact, motivated by race. *Bateman,* 318 S.W.3d at 689. To meet this standard, the party challenging the strike "must present evidence or specific analysis" showing that the proffered reason was pretextual. *State v. Johnson,* 930 S.W.2d 456, 460 (Mo.App.1996). The party "cannot simply rely on conclusory allegations that the real motivation for the strike was racial in nature." *Id.* Factors that may be relevant to the determination of pretext include: (1) "the presence of 'similarly situated white jurors who were not struck,'" *State v. Strong,* 142 S.W.3d 702, 712 (Mo. banc 2004) (citation omitted); (2) "the degree of logical relevance between the explanation and the case to be tried in terms of the nature of the case and the types of evidence adduced," *Kesler–Ferguson,* 271 S.W.3d at 559; (3) "the striking attorney's demeanor or statements during *voir dire,*"

*id.*; and (4) the circuit court's past experience with the striking attorney. *Id.* Because the circuit court is in a better position to observe trial counsel's sincerity and credibility and to observe the racial make-up of the jury panel, we rely on the circuit court "to consider the plausibility of the striking party's explanations in light of the totality of the facts and circumstances surrounding the case." *Id.*

■ In this case, the Goodmans properly raised a *Batson* challenge to Angle's peremptory strike of Venireperson 9, an African–American male; Venireperson 17, an African–American female, and Venireperson 21, a Hispanic male. With regard to Venireperson 9, Angle responded that she struck him because the Goodmans had specifically asked the venire panel if anyone felt nervous when going to a health care provider for the first time. Angle explained that she believed that part of the Goodmans' case was going to be that Marjorie was nervous and that her nervousness caused her not to tell Angle everything about her physical condition before Angle treated her. Angle said that she struck Venireperson 9 because he said that he, like Marjorie, gets nervous when he goes to a new health care provider.

In response to Angle's race-neutral reason for striking Venireperson 9, the Goodmans told the court that the issue of whether Marjorie's nervousness caused her not to tell Angle everything about her physical condition would "not be any part of the case." The Goodmans said that the only reason they raised the issue in *voir dire* was because the intake form Marjorie completed for Angle said, "high blood pressure, scared of doctors." The Goodmans also argued that Venireperson 9 said that, despite his getting nervous, like Marjorie does, when he goes to a new health care provider, he would not favor one party over the other. The court overruled the

Goodmans' *Batson* challenge after finding that Angle's reason for striking Venireperson 9 was race-neutral.

We find no error in the court's overruling the Goodmans' *Batson* challenge to Angle's striking Venireperson 9. One of the main issues in the case, as framed by the Goodmans' amended petition, was whether Angle was negligent for failing to properly perform a patient history to determine if Marjorie was a candidate for massage therapy. Angle's defense on this issue was that Marjorie did not fully and adequately apprise Angle of her past medical history and current complaints before Angle began treating her. From the Goodmans' asking the venire panel if any of them were "like Marjorie Goodman" in that they got nervous or scared when going to a new healthcare provider, Angle could have reasonably anticipated that the Goodmans were going to counter Angle's defense with evidence that Marjorie was nervous and that her nervousness caused her not to disclose all of her medical problems to Angle. Angle may have reasonably believed that, because of their shared nervousness at going to a new health care provider, Venireperson 9 would have been sympathetic to Marjorie's position. Although the Goodmans' counsel told the court that such an argument would "not be any part of the case," the circuit court was not required to believe him or rely on his prognostication.[3] We will defer to the circuit court's determination. *Id.* at 558. The degree of logical relevance between Angle's explanation for the strike and the nature of the issues in the case supports the circuit court's determination that the explanation was race-neutral.

As for the Goodmans' claim that Venireperson 9 said that he would not favor one party over the other, "such an observation, while important in the context of dealing with a challenge *for cause,* is not relevant in determining the propriety of a *peremptory* strike." *State v. Rollins,* 321 S.W.3d 353, 367 (Mo.App.2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 2115, 179 L.Ed.2d 910 (2011). "A venireperson's statement that he or she can set aside a prior experience and be 'fair and impartial' does not resolve the issues in a *Batson* context where the party seeking to strike the venireperson might have reason to think otherwise." *Id.* at 367–68. The circuit court did not clearly err in overruling the Goodmans' *Batson* challenge to Angle's striking Venireperson 9.

In response to the Goodmans' *Batson* challenge to Angle's striking Venireperson 17, Angle reminded the court that she had moved to strike this venireperson for cause, but the court had denied her motion. Angle explained that her reasons for wanting to strike Venireperson 17 were because (1) Angle found her statements to be "very confusing, contradictory"; (2) she had a bad back problem, "which identifie[d] her with" Marjorie Goodman; and (3) at one point, she said that the only reason anyone should go to a massage therapist was for "relaxation," and "this case [was] going to involve more than simple relaxation." After Angle provided her reasons, the Goodmans made no argument that these reasons were pretextual. The court found that Angle's reasons were race-neutral and allowed the strike.

---

**3.** In fact, the Goodmans did raise the issue in their case. In opening statement, the Goodmans told the jury that Marjorie "was a little nervous, she was a little scared, but she was still honest with this massage therapist." During direct examination, Marjorie's counsel asked her what she told Angle about her physical condition during her initial intake appointment on May 2, 2006. After testifying as to what she did and did not tell Angle, Marjorie testified that she "was nervous" during the appointment.

■ Because the Goodmans failed to challenge Angle's race-neutral reasons at trial, they are precluded from challenging them on appeal. *State v. Taylor*, 944 S.W.2d 925, 934 (Mo. banc 1997). A party's failure to challenge the striking party's race-neutral explanations in any way waives any future complaint that the striking party's reasons were racially motivated and leaves nothing for the appellate court to review. *Id.* Therefore, we deny the Goodmans' claim of error concerning their *Batson* challenge to Angle's striking Venireperson 17.

■ The Goodmans' final *Batson* challenge was to Angle's striking Venireperson 21 as an alternate juror. The court's pool of alternate jurors consisted of four venirepersons—two Caucasian females, one Caucasian male, and one Hispanic male. The court told the parties that they were each allowed one strike from the four. The Goodmans made their peremptory strike first and then gave the remaining three names to Angle to choose her peremptory strike. After the Goodmans struck one of the Caucasian females, Angle struck Venireperson 21, the Hispanic male.

In response to the Goodmans' *Batson* challenge, Angle told the court that two of the three venirepersons remaining on the pool of alternate jurors after the Goodmans' peremptory strike did not answer any questions or say anything during *voir dire*. The two silent venirepersons in the alternate pool were Venireperson 21 and Venireperson 23, a Caucasian male. Angle said that the reason that he struck Venireperson 21 instead of Venireperson 23 was because Venireperson 21's intake form indicated that his wife worked at CenterPoint, a health care facility, while Venireperson 23 did not have that connection to the health care field. Upon the court's

further questioning Angle about why Venireperson 21's connection to the health care field would be adverse to her, Angle said that she struck him because there were a lot of questions asked during *voir dire* regarding health care, working in the health care field, and being related to people in the health care field, but Venireperson 21 did not "speak up and explain the situation." The Goodmans' counsel responded that he specifically did not ask if anyone's spouse worked in the health care field. The court found that Angle's reasons for striking Venireperson 21 were race-neutral and denied the Goodmans' *Batson* challenge.

We first note that neither of the two alternate jurors deliberated in this case. The Eastern District of this court has ruled that, where no alternate jurors deliberate, the alternate venireperson's exclusion from the jury does not violate the constitutional rights of either the party opposing the strike or the excluded venireperson. *State v. Carter*, 889 S.W.2d 106, 109 (Mo.App.1994) (holding that *"Batson* does not stand for the proposition there is a Constitutional right to be an alternate juror"). We need not address this issue here because, as discussed hereinafter, a review of this point on the merits demonstrates that the circuit court did not err in overruling the challenge.[4]

Angle said that she struck Venireperson 21 because he did not say anything during *voir dire*. "A prospective juror's silence . . . is a permissible, facially neutral explanation for a peremptory strike." *State v. Barnett*, 980 S.W.2d 297, 302 (Mo. banc 1998). Although Venireperson 23 was also silent during *voir dire*, the two men were not similarly situated because Venireperson 21's wife worked in the health care field. The Goodmans are correct that panel members were asked about their own

---

4. For more on this issue, see *Carter v. Kemna*, 255 F.3d 589 (8th Cir.2001).

medical and health care background and not that of their spouses. Panel members were, however, asked their opinions on several issues related to the health care field and health care providers. Also, when panel members were asked if there was anything else that they thought either party would want to know about them, two panel members volunteered that they had relatives in the health care field and another panel member volunteered that, while he did not fit exactly into the categories about which the parties had asked, he wanted to make the parties aware of his tangential connection to those categories. In light of these circumstances, the circuit court could have reasonably found Angle's explanation that she struck Venireperson 21 for failing to "speak up" plausible, and we defer to its decision to do so. The circuit court did not clearly err in overruling the Goodmans' *Batson* challenge to Angle's striking Venireperson 21.

In their second point, the Goodmans claim that the circuit court erred in refusing to allow them to question Angle about collateral issues that they contend would have impeached her credibility. The circuit court has broad discretion to admit or exclude evidence. *Mitchell v. Kardesch,* 313 S.W.3d 667, 674–75 (Mo. banc 2010). We will not disturb the circuit court's ruling unless we find an abuse of discretion. *Id.* at 675. An abuse of discretion occurs where the ruling "is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* (internal quotation marks and citations omitted).

After calling Angle to testify as a witness in their case-in-chief, the Goodmans sought to examine her about a book that they had asked her to bring to trial. The book was entitled *Gems and Miner-*

*als/Flower Essences.* Angle objected on the basis of relevancy. During the subsequent bench conference, the Goodmans argued that the book was relevant to Angle's "qualifications to be a licensed massage therapist." Specifically, the Goodmans said that the book contained writings about practices and techniques that were "way outside the scope of normal massage therapy." The Goodmans admitted that Angle did not use any of the book's practices or techniques on Marjorie and, further, that the book was written three years after Angle treated Marjorie. Nevertheless, the Goodmans argued that questions about the book were relevant to show Angle's continuing education, which they claimed bore upon her credibility. The circuit court found the Goodmans' questions about the book irrelevant and sustained Angle's objection.

Later, the Goodmans made an offer of proof in which they told the court that they wanted to examine Angle about practices in the *Gems and Minerals/Flower Essences* book, another book entitled *Intro to Vibe & Craniosacral Balancing,* and an untitled book. The Goodmans told the court that Angle had produced these books in response to their request for any training materials that she had received. According to the court's description of the books, all of the books were notebooks that "mostly, if not exclusively, contain handwritten notes that appear to be written by [Angle]." The books were possibly from lectures or classes that Angle had attended. While the record indicates that the *Gems and Minerals/Flower Essences* book was written in 2009, there is no indication as to when the other books were written.[5] The Goodmans said that they would offer evidence that the practices and techniques in these books were "outside the scope of

5. The books were not part of the record on appeal.

what a licensed massage therapist does."[6] Again, the Goodmans admitted that Angle did not use any of the books' practices or techniques on Marjorie, but argued that her receiving the information contained in the books as part of her continuing education and training made her less credible and less trustworthy. The circuit court refused to admit evidence regarding the books. On appeal, the Goodmans argue that the circuit court erred in not allowing them to examine Angle about the books to impeach her credibility. We disagree.

The Goodmans' offer of proof was not sufficient to permit the circuit court to further consider their claim of admissibility or to preserve the record for appellate review. An offer of proof must be specific and definite and demonstrate three things: "(1) what the evidence will be; (2) the purpose and object of the evidence; and (3) each fact essential to establishing the admissibility of the evidence." *Turner v. City of Independence,* 186 S.W.3d 786, 790 (Mo.App.2006). The Goodmans' offer of proof failed to demonstrate the facts essential to establish the admissibility of their proposed examination.

The Goodmans argued that questions about Angle's having received the information contained in the books as part of her continuing education were relevant to Angle's qualifications and training. The offer of proof did not show that Angle *ever* used or even agreed with the practices and techniques in the books, however. All the Goodmans' offer of proof showed was that Angle received information concerning allegedly unconventional practices and techniques as part of her continuing education and training, made handwritten notes about the practices in the books, and retained possession of the books. While the

Goodmans argued that "if [Angle]'s performing stuff outside the scope of what licensed massage therapists do, that's a big ding on her credibility," the Goodmans never demonstrated that the evidence would show that Angle was, in fact, performing the practices and techniques described in the books or even approved of such methods. The offer of proof was, therefore, deficient in this regard.

Nevertheless, we will explain, *ex gratia,* why the circuit court did not abuse its discretion in refusing to allow this line of questioning. Contrary to the Goodmans' claim, Angle's receiving information concerning allegedly unconventional practices and techniques as part of her continuing education and training had no bearing upon her credibility as a witness. In *Mitchell,* 313 S.W.3d at 675, the Missouri Supreme Court outlined the most commonly recognized methods of impeaching a witness's credibility:

- admission of evidence showing the witness's incapacity or problems in his or her ability to perceive or memory;

- admission of evidence of prior convictions;

- admission of evidence of the witness's bias, interest or prejudice;

- admission of prior inconsistent statements of the witness;

- admission of evidence of the witness's character for truthfulness and veracity.

(Footnote omitted.) The Goodmans' proposed examination did not fall under any of these categories of impeachment. The Goodmans contend that, because *Mitchell* says that a witness "may be asked about specific instances of his or her own conduct that speak to his or her own character for

---

**6.** According to the Goodmans' offer of proof, the books describe practices such as using gemstones in massage therapy, submerging a person's head in salt water, and soaking food in Clorox.

truth or veracity, even where the issue inquired about is not material to the substantive issues in the case," they were entitled to ask Angle about the collateral issue of the books. *Id.* at 677. The Goodmans' reliance upon *Mitchell* is misplaced, however, because Angle's receiving the information contained in the books as part of her continuing education and training did not speak at all to her character for truthfulness and veracity.

As for the Goodmans' contention that their proposed examination was relevant to Angle's qualifications as a licensed massage therapist, we note that nothing in the Goodmans' amended petition claimed that Angle lacked the competency or qualifications to be a licensed massage therapist. One of the main issues at trial was whether there were contraindications to massage therapy that Angle, as a licensed massage therapist, failed to recognize or consider in deciding to perform massage therapy on Marjorie. While the Goodmans argue that "Angle's qualifications and training relate[d] directly to her decision to perform massage therapy on Marjorie," we do not understand how Angle's receiving the information contained in these books, at least some if not all of which several years *after* she treated Marjorie, affected her qualifications as a licensed massage therapist to decide whether to treat Marjorie. There was no allegation or evidence that Angle used the allegedly unconventional practices and techniques from the books in treating Marjorie or that Angle relied upon the information in the books in making the decision to treat her. Angle's receiving and retaining the information contained in the books was not relevant to her credibility, her qualifications, or to any other issue in this case. The circuit court did not abuse its discretion in refusing to allow the Goodmans' proposed examination.

We, therefore, affirm the circuit court's judgment and dismiss as moot Angle's cross-appeal.

All concur.