**STATE of Missouri, Respondent,**

v.

**John H. HARRIS II, Appellant.**

**No. ED 104441**

Missouri Court of Appeals,
Eastern District,
**DIVISION FIVE.**

Filed: April 25, 2017

---

Evan J. Buchheim, Assistant Attorney General, Jefferson City, MO, for Respondent.

Richard R. Lozano, St. Louis, MO, for Appellant.

Philip M. Hess, Chief Judge

### Introduction

John Henry Harris ("Appellant") appeals the judgment of the Circuit Court of Cape Girardeau County, following a jury trial, convicting him of one count of first-degree child molestation in violation of § 566.067 [1] and one count of first-degree statutory sodomy in violation of § 566.062. The trial court sentenced Appellant to two

---

1. All subsequent statutory citations are to RSMo (Cum. Supp. 2012), unless otherwise indicated.

fifteen-year sentences to run consecutively. On appeal, Appellant argues that the trial court clearly erred in overruling his *Batson* challenge because the State's peremptory strike of an African–American juror was pretextual and racially motivated. We affirm.

### *Factual and Procedural History*

Appellant was charged as a prior offender with one count of first-degree child molestation and one count of first-degree statutory sodomy resulting from incidents in August 2014 and October 2014. His jury trial commenced on March 29, 2016. During voir dire, the prosecutor asked the venire panel whether anyone had ever been arrested or charged with a crime other than a traffic offense. Venireperson L.B. stated that he was charged with public intoxication when he was a teenager. L.B. stated that the charge would not affect his ability to be impartial.

The prosecutor then asked the venire panel whether anyone would be unable to be fair in hearing the case for any other reason. Several jurors expressed an inability to be impartial due to the nature of the charges. However, venireperson C.B., an African–American man, stated:

> Well, you know, in my opinion, you know, and I'm not taking sides, but this man is on trial and this is his life, you know. In that certain instance, we have to hold the girls accountable for what they say because none of us is on trial for this. This is a serious matter. This man—you know, he can go to jail for a long time, you know, so in that question, yes, I'm going to hold them accountable for it, you know. I mean I'm not going to say that they need to detail every single thing, but they have to be pretty accurate with their information.

When the prosecutor asked C.B. whether he would be able to accept the word of a child, he answered: "Yes, yes, as long as it's accurate, you know. I just—I would rather be fair, you know. To say that this man is guilty for these acts and not have any facts and just accusation, you're going to have to take everyone's word accountable."

Following the voir dire, the court took private questions from venire panelists. Venireperson M.A. disclosed to the judge that he was once convicted of a felony. The judge informed M.A. that he was not eligible for jury service and released him. C.B. disclosed that he was convicted of misdemeanor assault in 2007 and stated that he listed the crime on his jury questionnaire. The judge then remarked that C.B. was the only member of the venire panel that raised their hand when defense counsel asked if anyone wanted to be on the jury. In response, C.B. stated, "Yeah, because it seemed like it's not going to be a fair trial. It's kind of short. It's not a lot of people and it's a lot of mixed emotions and I just feel like honestly I'm the only one that's really looking at both sides just to me."

When the prosecutor then asked whether C.B. wanted to be on the jury to "to make sure that you can make it fair [to the defendant]," the following exchange took place:

> [C.B.]: That's a good question. I wouldn't say I'm trying to make it fair to him. I just—instead of feelings being involved in the judgment, the actual facts, and you know, the details be brought out to light truthfully.
>
> [The prosecutor]: Do you feel like you're kind of leaning towards his side?
>
> [C.B.]: No, because this is a terrible, terrible crime and I just want everything to be brought out fairly and truthfully.

Defense counsel asked C.B. whether his concern was that members of the venire

panel had already made up their minds about the defendant's guilt before hearing any evidence. C.B. answered in the affirmative. He stated that he could be fair to both sides and listen to the evidence.

During strikes for cause, the State moved to strike venireperson L.C., an African–American woman, because she did not sleep the previous night due to a virus. Defense counsel objected, noting that she said she would be capable of serving on the jury. The court denied the strike for cause. The State moved to strike venireperson C.B., alleging that C.B.'s statements during private questioning indicated that he wanted to be on the jury to "even the score" for the defendant. The State also noted that C.B. was the only member of the venire panel to raise their hand when the panel was asked if anyone wanted to serve on the jury. Defense counsel objected to the strike, characterizing C.B.'s comments as a "wonderful, lovely, and poignant" response to the statements of other venirepersons expressing an inability to be impartial due to the nature of the charges. The court denied the strike for cause.

The State used peremptory strikes on venirepersons L.C and C.B., who were now the only remaining African–American members of the venire. Defense counsel noted that Appellant was an African–American, and raised *Batson* challenges to both peremptory strikes. The State's race-neutral reason for striking venireperson L.C. was her statement that she did not sleep the previous night because she had a virus and that she was still nauseated. The court denied the peremptory strike. The State offered two race-neutral reasons for striking C.B. First, it stated that C.B. failed to disclose several criminal convictions on his jury questionnaire and during private questioning. In addition to the mis-

demeanor assault conviction he disclosed on his jury questionnaire, C.B. had another misdemeanor assault conviction and a conviction for disturbing the peace. Moreover, the prosecutor's office had issued a warrant for C.B. on a domestic assault charge. Second, the State asserted that C.B.'s desire to be on the jury and his statements during voir dire and private questioning revealed that he "[wanted] to be on this jury for this defendant." Defense counsel argued that the State's use of the phrase "this defendant," coupled with the fact that C.B. was an African–American, indicated that the State inferred C.B. wanted to be on the jury because both he and Appellant were African–American. Defense counsel stated that C.B.'s statements during voir dire constituted a civic-minded response to the statements of the other venirepersons and were therefore not a proper race-neutral basis for a peremptory strike. Finally, defense counsel argued that C.B. was not dishonest on his jury questionnaire. The court permitted the peremptory strike, stating that a "fair reading of [C.B.'s] response and his desire to be on the jury is to take the side of the defense. That's the way I understood his responses at the bench."

### Discussion

In his sole point relied on, Appellant claims that the trial court erred in denying his *Batson* challenge because the State's proffered explanation for its peremptory strike of C.B. was pretextual and the strike was racially motivated. Appellant argues that two white venirepersons who were not struck, M.A. and L.B., were similarly situated to C.B. because they also failed to disclose criminal convictions on their jury questionnaires. Additionally, Appellant claims that the State investigated C.B.'s criminal history before trial, but not

M.A.'s.[2] Appellant asserts that the disparate treatment of C.B.'s criminal history, combined with the State's overturned peremptory strike of L.C, undermines its proffered race-neutral reasons for striking C.B. Finally, Appellant asserts that the State's racially motivated peremptory strike of C.B. violated C.B.'s equal protection right to sit on a jury.

In response, the State argues that because Appellant did not raise the argument that venire panelists similarly situated to C.B. were not struck at trial, the argument cannot be considered on appeal. The State further asserts that C.B. was not similarly situated to L.B. or M.A. It points out that since M.A. was disqualified from jury service, he was not even available to be struck. It argues that L.B. was not similarly situated to C.B. because he disclosed his criminal record in open court and was a substitute teacher at the victims' school, a fact which benefited the State. The State also asserts Appellant's attempt to strike L.B. for cause tacitly conceded that L.B. and C.B. were not similarly situated. Finally, the State asserts that its concern that C.B. sympathized with the defendant was a legitimate race-neutral basis for a peremptory strike.

### Relevant Law

In *Batson v. Kentucky*, the Supreme Court held that the Equal Protection Clause forbids the exercise of a peremptory strike of a potential juror solely on the basis of the juror's race. 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Court reasoned that purposeful racial discrimination in selection of a jury violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure. *Id.* at 86–88, 106 S.Ct. 1712.

Missouri courts have established a three-step procedure for *Batson* challenges. *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992). First, the party raising the *Batson* challenge must object to the strike of a specific venireperson, and identify the racial group to which the venireperson belongs. *Id.* The party exercising the strike then has the burden of producing a reasonably specific and clear race-neutral explanation for striking the venireperson. *Id.* The proponent's explanation must be more than a mere denial of discriminatory purpose. *McFadden II*, 216 S.W.3d at 675. However, the proffered explanation will be deemed race-neutral if it is not inherently discriminatory. *State v. Marlowe*, 89 S.W.3d 464, 468–469 (Mo. banc 2002). The burden then shifts back to the party raising the *Batson* challenge to prove that the proffered explanation was pretextual and that the strike was racially motivated. *Parker*, 836 S.W.2d at 939.

Pretext is determined by evaluating the "plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case." *Id.* A crucial factor in determining pretext is whether similarly situated jurors were struck. *Marlowe*, 89 S.W.3d at 469. Other factors include "the logical relevance between the State's proffered explanation and the case to be tried, the prosecutor's credibility based on his or her demeanor or statements during voir dire and the court's past experiences with the prosecutor, and the demeanor of the excluded venireperson." *State v. Johnson*, 207 S.W.3d 24, 35 (Mo. banc 2006). Pretext is determined by the prosecutor's stated rea-

---

2. Appellant fails to cite to the record to support his claim that the State investigated C.B.'s criminal history before trial. Our review of the record suggests the State investigated Appellant's criminal record shortly before the parties made their peremptory strikes. Appellant also fails to explain how the State investigating C.B.'s criminal record but not M.A.'s before trial is relevant to pretext.

sons for the strike at the time of the *Batson* inquiry. *State v. Bateman*, 318 S.W.3d 681, 690 (Mo. banc 2010).

A trial court's ruling on a *Batson* challenge will be overruled only if its decision is clearly erroneous. *State v. McFadden*, 216 S.W.3d 673, 675 (Mo. banc 2007) ("*McFadden II*"). A decision is clearly erroneous if the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.* The trial court is accorded great deference because its findings of fact largely depend on its evaluation of credibility and demeanor. *Kesler–Ferguson v. Hy–Vee Inc.*, 271 S.W.3d 556, 558 (Mo. banc 2008).

### Analysis

We agree with the State that Appellant's argument that venirepersons M.A and L.B. were similarly situated to C.B. was not properly preserved for appeal. *See State v. Johnson*, 220 S.W.3d 377, 383 (Mo. App. E.D. 2007) (declining to consider the argument that there were two similarly situated white venirepersons who were not struck because the defendant raised the argument for the first time on appeal).

Furthermore, the argument fails even if it were preserved for appeal. The record demonstrates that M.A. was released by the court before the State issued its peremptory strikes. Therefore, for the purposes of a *Batson* challenge, M.A. obviously cannot be considered a similarly situated juror.

We reject Appellant's argument that L.B. was similarly situated to C.B. because they both had "previously undisclosed criminal records." Although it is true that L.B. did not disclose his public intoxication charge until voir dire, C.B. never disclosed his entire criminal record.

C.B.'s jury questionnaire omitted two convictions,[3] and during private questioning, he reiterated that the extent of his criminal record was one misdemeanor assault conviction. Since L.B. disclosed his criminal record, he was not similarly situated to C.B.

We agree with the State that its concern that C.B. wanted to be on the jury to "even the score" for Appellant was a valid, race-neutral reason for striking C.B. The State points to *State v. Robinson*, in which a prosecutor's "hunch" that a prospective juror was sympathetic to the defendant was adequate to support a peremptory strike because the factors relied on were race-neutral. 832 S.W.2d 941, 944 (Mo. App. E.D. 1992) (citing *State v. Kemper*, 824 S.W.2d 909, 911 (Mo. banc 1992) (explaining that *Batson* permits prosecutors to "play hunches" if the factors relied on are race-neutral)). Here, the State based its "hunch" that C.B. wanted to be on the jury to "even the score" for Appellant on C.B.'s statements, and not on C.B.'s race. The record supports the plausibility of the State's explanation. C.B. expressed concern over the fairness of the trial and stated that he believed he was the only venireperson capable of impartiality. He was the only venireperson that openly wanted to be on the jury, and when the prosecutor asked during private questioning if he wanted to "make sure that you can make [the trial] fair" to Appellant, he began his response with "that's a good question." He said he would "hold [the victims] accountable for what they say."

Moreover, we afford great deference to a trial court's decision concerning a *Batson* challenge because its findings of fact largely depend on its evaluation of credibility and demeanor. *Kesler–Ferguson*, 271 S.W.3d at 558. We place great

---

**3.** The State also discovered at trial that the prosecutor's office had issued a warrant for C.B.'s arrest on domestic assault charges.

reliance on the trial court's judgment regarding the legitimacy of the State's peremptory strike. *State v. Brown*, 246 S.W.3d 519, 525 (Mo. App. S.D. 2008). Here, the trial judge stated he "understood [C.B.'s] responses" as a "desire to be on the jury... to take the side of the defense."

Appellant further argues that the State's attempted peremptory strike of the other remaining African–American venireperson, L.C., undermines the State's proffered race-neutral explanations for striking C.B. However, even assuming, without so holding, that the State used a disproportionate number of strikes against African–American venirepersons, this fact would only be one factor for the trial court to consider when determining pretext. *Bateman*, 318 S.W.3d at 690–91. Given C.B's failure to fully disclose his criminal record and the statements he made that were sympathetic to Appellant, the trial court was not clearly erroneous in determining that the State's race-neutral reasons for striking C.B. were not pretextual.

▮ Finally, Appellant argues that C.B.'s equal protection right to sit on a jury was violated. Because the State's explanations for its peremptory strike of C.B. were not pretextual and racially motivated, the State did not violate C.B.'s equal protection rights.

Accordingly, the trial court did not err in denying Appellant's *Batson* challenge. Appellant's point is denied.

### Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

Lawrence E. Mooney, J. and James M. Dowd, J. concur.