In the
 Missouri Court of Appeals
 Western District
 STATE OF MISSOURI, )
 )
 Respondent, ) WD83615
 )
 v. ) OPINION FILED: December 21, 2021
 )
 CHRISTOPHER R. JACKSON, )
 )
 Appellant. )

 Appeal from the Circuit Court of Jackson County, Missouri
 The Honorable Joel P. Fahnestock, Judge

Before Division Four: Cynthia L. Martin, Chief Judge, Presiding, Lisa White Hardwick,
 Judge, and Thomas N. Chapman, Judge

 Christopher R. Jackson ("Jackson") appeals from a judgment convicting him of one

count of rape in the first degree, one count of domestic assault in the second degree, one

count of attempted tampering with a victim, and two counts of violating an order of

protection. Jackson claims on appeal that the trial court erred in overruling his objection

to the State's use of a peremptory strike, in allowing testimony about prior uncharged acts

of abuse, in instructing the jury how it could consider the evidence of prior uncharged acts

of abuse, and in finding that he was a prior assault offender. Finding no error, we affirm
Jackson's convictions. However, we remand this matter to the trial court with instructions

to correct a clerical error in the judgment.

 Factual and Procedural History

 The State charged Jackson as a prior assault offender with one count of rape in the

first degree, one count of domestic assault in the second degree, one count of attempted

rape in the first degree, one count of attempted tampering with a victim, and two counts of

violation of an order of protection. Viewed in the light most favorable to the jury's

verdicts,1 the evidence at trial established the following:

 On the evening of January 27, 2019, L.D. ("Victim") was asleep in her bedroom

when her boyfriend, Jackson, returned home, undressed, and then crawled in bed next to

Victim. Jackson began to undress Victim, and she said, "[N]o, I'm not in the mood for any

of that, chill, not in the mood for it" because she had just returned from her grandmother's

funeral and was still grieving. Jackson told Victim that she "didn't even know that woman."

After Victim said that she "just [was] not in the mood" and that she did not want to have

sex, Jackson hit the left side of Victim's face with his closed fist and attempted to pin her

down to the bed. Jackson then "yanked" Victim's clothes off her body and hit her "multiple

times in the face." Victim told Jackson to stop and fought back, but Jackson then penetrated

Victim's vagina with his penis. Victim said, "No, please don't do this. Why are you doing

this?" Jackson said "mean" and "insulting stuff," like "I go to work all the time," and "this

is mine." Jackson grabbed Victim by her hair and "yank[ed] it back and forth, real fast,"

 1
 We view the evidence in the light most favorable to the jury's verdicts, disregarding all contrary evidence
and inferences. State v. Hendricks, 619 S.W.3d 171, 173 n.1 (Mo. App. W.D. 2021).

 2
while continuing to penetrate her. Chunks of Victim's hair were later discovered on the

bedroom carpet and on the mattress.

 Once Jackson was no longer penetrating Victim, she went to the bathroom to look

at her face. Victim began crying because "[her face] was all bruised up." Jackson came

into the bathroom and said, "I'm not done with you. What are you doing?" before grabbing

Victim's hair and dragging her back to the bedroom. Victim attempted to fight back, but

she was overpowered. Once Jackson had taken Victim to the bedroom, Jackson began

kicking Victim "real hard" and tried to lift Victim onto the bed when she "kept falling down

on purpose so [she would not] have to get [in]to the bed." Jackson retaliated by punching

Victim's stomach with a closed fist. Victim stopped resisting at that point due to the pain

she was suffering and "just let [Jackson] have his way." Jackson forced Victim to have

intercourse a second time. Victim waited for Jackson to fall asleep, and once he had been

asleep for one or two hours, Victim left the bedroom and called the police.

 The police arrived while Jackson was still sleeping. An officer transported Victim

to a nearby hospital, where Victim was examined by a sexual assault nurse examiner

("SANE") nurse. Victim reported to the SANE nurse that she had been sexually and

physically assaulted by an intimate partner. The SANE nurse noted that Victim's left

temple and cheek were swollen and bruised. The SANE nurse collected swabs of Victim's

cervix. Those cervical swabs were later tested for the presence of DNA. The fluid swabbed

from Victim's cervix contained DNA matching the DNA of Victim and of Jackson.

 Victim sought and obtained an order of protection against Jackson. The order of

protection provided that Jackson "shall not communicate with [Victim] in any manner or

 3
through any medium," and "strictly prohibited" "the use of third parties, including children,

to communicate." A process server personally served Jackson with the order of protection

on February 26, 2019. Thereafter, Jackson sent at least four letters to Victim, asking Victim

not to answer calls from the prosecutor's office, to live elsewhere to avoid receiving a

subpoena, not to come to court, and to ask that Jackson's charges be dropped.

 Jackson was tried before a jury in October 2019. Prior to voir dire, the trial court

found beyond a reasonable doubt that Jackson was a prior assault offender because he

pleaded guilty and was convicted of domestic battery in Johnson County, Kansas in 2015.

 The jury acquitted Jackson of attempted rape in the first degree but found Jackson

guilty of the remaining five charges. The trial court entered a judgment ("Judgment")

sentencing Jackson as a prior assault offender2 to fifteen years' incarceration for the first-

degree rape conviction, five years' incarceration for the second-degree domestic assault

conviction, seven years' incarceration for the tampering with a victim conviction, and three

years' incarceration for each of the convictions for violating an order of protection. The

Judgment ordered that the domestic assault sentence was to run consecutively to the rape

sentence, but that the tampering with a victim and violating an order of protection sentences

 2
 The Judgment indicates that the trial court found Jackson to be a "persistent assault offender," but referred
to section 565.079.13, the subsection describing prior assault offenders. The Judgment sentenced Jackson in
accordance with the trial court's oral finding at trial that Jackson was a prior assault offender. Both Jackson and the
State treat the Judgment as finding beyond a reasonable doubt that Jackson is a prior assault offender, not a
persistent assault offender.
 Such an error is a clerical mistake that may be corrected by a nunc pro tunc judgment. See State v. Spears,
452 S.W.3d 185, 198 (Mo. App. E.D. 2014). However, in lieu of requiring motion for nunc pro tunc judgment to be
filed, we remand this matter to the trial court with instructions to correct the Judgment to reflect that Jackson was
convicted as a prior assault offender.
 All statutory references are to RSMo 2016 as supplemented through January 27, 2019, unless otherwise
indicated.

 4
were to run currently with the rape sentence. Thus, Jackson was sentenced to a total of

twenty years' incarceration.

 Jackson appeals. Additional facts are discussed in the analysis portion of the

Opinion as necessary.

 Analysis

 Jackson presents four points on appeal, challenging the peremptory strike of a

potential juror, the admission of prior uncharged acts, a jury instruction's reference to

evidence of prior uncharged acts, and the trial court's determination that he was a prior

assault offender. We address the points in turn.

Point One: State's Peremptory Strike of Venireperson No. 5

 Jackson argues that the trial court clearly erred in overruling his objection to the

State's peremptory strike of Venireperson No. 5 as an improper attempt to exclude a

potential juror in contravention of Batson v. Kentucky, 476 U.S. 79 (1986). Venireperson

No. 5 was the only potential juror who self-identified as Native American.

 Our review of a trial court's denial of a Batson challenge is for clear error. State v.

Gilbert, 628 S.W.3d 702, 707 (Mo. App. W.D. 2021). A trial court's ruling on a Batson

challenge constitutes clear error if "we . . . have a 'definite and firm conviction that a

mistake has been made.'" Id. (quoting State v. Bateman, 318 S.W.3d 681, 687 (Mo. banc

2010)). "A trial court’s determination that a peremptory strike was made on racially neutral

grounds is entitled to great deference on appeal," State v. Boyd, 597 S.W.3d 263, 268 (Mo.

App. W.D. 2019), "because its findings of fact largely depend on its evaluation of

 5
credibility and demeanor." Gilbert, 628 S.W.3d at 707 (quoting State v. Evans, 490 S.W.3d

377, 384 (Mo. App. W.D. 2016)).

 Pursuant to the Equal Protection Clause of the Fourteenth Amendment, peremptory

challenges may not be used to remove "potential jurors solely on account of their race."

Batson, 476 U.S. at 89. The Missouri Supreme Court has identified a three-step burden-

shifting procedure for trial courts to use to determine whether a peremptory challenge by

the state runs afoul of the Equal Protection Clause:

 First, the defendant must raise a Batson challenge with regard to one or more
 specific venirepersons struck by the state and identify the cognizable racial
 group to which the venireperson or persons belong. The trial court will then
 require the state to come forward with reasonably specific and clear race-
 neutral explanations for the strike. Assuming the prosecutor is able to
 articulate an acceptable reason for the strike, the defendant will then need to
 show that the state's proffered reasons for the strikes were merely pretextual
 and that the strikes were racially motivated.

State v. Meeks, 495 S.W.3d 168, 172-73 (Mo. banc 2016) (quoting State v. Parker, 836

S.W.2d 930, 939 (Mo. banc 1992)).

 Jackson challenges only the third step, and argues that the trial court clearly erred

when it concluded that Jackson failed to demonstrate that the State's proffered reason for

exercising a peremptory challenge to strike Venireperson No. 5 was merely pretextual and

was instead racially motivated. We disagree.

 During voir dire, the State asked, "Is there anyone here who has a close personal

friend or family member who has been convicted of domestic violence or sexual assault or

some other violent crime?" Six members of the venire panel raised their hands. One was

Venireperson No. 5, who had the following exchange with the prosecutor:

 6
 Q: Juror Number 5?

 A: Both my brothers served 20 years. Both of them were jumped by their
 children, they got convicted, 20 years.

 Q: So that happened 20 years or more ago?

 A: Yeah.

 Q: Was that prosecuted here in Jackson County?

 A: Yes.

 Q: Do you believe that they were prosecuted fairly?

 A: No.

 Q: And to have that experience and have two brothers that had been
 sentenced and feel like the system didn't treat them fairly, is that something
 that has got a bad taste in your mouth to the point that it may affect the way
 you look at the evidence in this case?

 A: No.

 Q: Okay. It's not going to cause you to hold it against me?

 A: No.

 At the end of voir dire, the State sought to use a peremptory strike to remove

Venireperson No. 5. Jackson lodged a Batson objection. The State explained that it wanted

to strike Venireperson No. 5 because he believed his two brothers were not treated fairly

by the criminal justice system. In response, Jackson argued that the State's stated reason

for striking Venireperson No. 5, a self-identified Native American, was mere pretext,

demonstrated by "disparate questioning" of other members of the venire who were not

asked whether they believed their family member had been treated fairly by the criminal

justice system, even though they had family members who had been found guilty of

domestic violence, sexual assault, or some other violent crime. Jackson thus argued that

 7
the "treated fairly" question was designed by the State to elicit an answer to pretextually

support striking Venireperson No. 5.

 The trial court overruled Jackson's Batson challenge, noting that the State did not

strike other members of the venire who self-identified as African American and Asian, and

explaining that "the State gave a race-neutral reason and I did understand the question and

I do understand the standard. Even so I did find the State gave a race-neutral reason and

therefore the Batson objection will be overruled." The trial court thus found that Jackson

did not sustain his burden to establish that the State's proffered reason for its strike of

Venireperson No. 5 was merely pretextual and was racially motivated.

 Jackson had the burden to demonstrate that the State's proffered race-neutral reason

for striking Venireperson No. 5 was pretextual. See Boyd, 597 S.W.3d at 271 ("[T]he

arrest, prosecution, or incarceration of a relative is a race-neutral reason for exercising a

peremptory challenge.") (quoting State v. Johnson, 930 S.W.3d 456, 461-62 (Mo. App.

W.D. 1996)). A conclusory allegation that the peremptory strike was motivated by race is

not sufficient to meet that burden. State v. Jackson, 385 S.W.3d 437, 440 (Mo. App. W.D.

2012). Instead, the party challenging the peremptory strike has the burden to "present

evidence or specific analysis showing that the proffered reason was pretextual." Gilbert,

628 S.W.3d at 708 (quoting Jackson, 385 S.W.3d at 440). In determining whether the

State's proffered reason for the peremptory strike was merely pretextual, we "consider[] a

non-exclusive list of factors . . . , including: 'the explanation in light of the circumstances;

similarly situated jurors not struck; the relevance between the explanation and the case; the

demeanor of the state and excluded venire members; the court's prior experiences with the

 8
prosecutor's office; and objective measures relating to motive.'" Id. (quoting State v.

McFadden, 369 S.W.3d 727, 739 (Mo. banc 2012)). Disparate questioning of members of

the venire may be probative of discriminatory intent if the use of disparate questioning is

determined by race. Flowers v. Mississippi, 139 S. Ct. 2228, 2248 (2019).

 Jackson first argues that, even though Venireperson No. 5 answered that he had two

brothers he believed had not been treated fairly by the criminal justice system, his ability

to remain fair and impartial had been rehabilitated so that "the State had no reason to

legitimately conclude that [Venireperson] No. 5's belief that his brothers were treated

unfairly in their specific situation amounted to a larger bias against the prosecutor's office

generally." [Appellant's Brief, p. 26] This argument is not preserved for our review, as it

was not presented to the trial court. See State v. Harris, 516 S.W.3d 461, 467 (Mo. App.

E.D. 2017) (finding an argument of pretext made for the first time on appeal unpreserved).

 Jackson next argues, as he did at trial, that other members of the venire who had

family members convicted of domestic violence, sexual assault, or another violent crime

were not asked whether they believed the family member had been treated fairly by the

criminal justice system. According to Jackson, because the follow-up "fairly treated"

question created the purportedly race-neutral reason for striking Venireperson No. 5, the

State's failure to ask the same question of other similarly situated members of the venire

establishes that the stated reason for striking Venireperson No. 5 was pretextual.

 Six members of the venire raised their hands when the State asked, "Is there anyone

here who has a close personal friend or family member who has been convicted of domestic

violence or sexual assault or some other violent crime?" Two of those six members of the

 9
venire self-identified as members of a racial minority: Venireperson No. 5 self-identified

as Native American, and Venireperson No. 44 self-identified as African American.

Venireperson No. 44 ultimately served on the jury. Venireperson No. 9, whose self-

identified race cannot be determined from the record, was asked if she believed her father-

in-law had been treated fairly by the criminal justice system. Though she answered yes,

she was struck by the State for cause. Another member of the venire who raised their hand

in response to the State's question was also struck for cause, though never asked the "treated

fairly" follow-up question.

 Thus, of the six members of the venire who raised their hand in response to the

State's question about prior convictions, two members (whose race cannot be determined

from the record) were struck by the State for cause, and one member (Venireperson No. 44

who self-identified as a minority) served on the jury. We cannot say under these

circumstances that the trial court clearly erred in concluding that Jackson failed to establish

that the State's decision to strike Venireperson No. 5 was merely pretextual. Nothing

prohibited the State from using "'hunch' challenges so long as racial animus [was] not the

motive." Gilbert, 628 S.W.3d at 709 (quoting State v. Antwine, 743 S.W.2d 51, 67 (Mo.

banc 1987)).

 Point One is denied.

Point Two: Evidence of Prior Abuse

 Jackson's second point on appeal challenges the admission of Victim's testimony

about uncharged acts of abuse by Jackson. Jackson argues that the testimony constituted

inadmissible propensity evidence, or that the prejudicial impact of the testimony

 10
outweighed its probative value if offered for any other purpose. Jackson claims that he

was prejudiced by the erroneously admitted testimony about the prior acts of abuse.3

 The State asserts that Jackson's second point on appeal is not preserved for appellate

review because he failed to object each time Victim testified about prior uncharged acts of

abuse. To preserve a claim of error relating to the admission of evidence, a party must

make an objection at the time the evidence is sought to be admitted at trial. State v.

McWilliams, 564 S.W.3d 618, 625 (Mo. App. W.D. 2018).

 Here, Jackson filed a pre-trial motion in limine asking the trial court to prohibit the

admission of evidence regarding Jackson's uncharged crimes, bad acts, or bad character,

and specifically, evidence of prior instances of abuse involving Victim. The motion was

denied after the State argued that it intended to admit evidence of Jackson's prior abuse of

Victim to show Victim's fear of Jackson to satisfy the forcible compulsion element of rape,

to demonstrate Jackson's intent, and to give the jury a complete picture of the circumstances

surrounding the crimes. The trial court, however, told Jackson's counsel to object "as

things come up," and that the trial court would revisit the issue as she "learn[ed] more about

the case."

 3
 The State asserts that Jackson waived his second point on appeal during opening statement. The State is
correct that a defendant waives a complaint about the admission of evidence by opening a door "with a theory
presented in an opening statement." State v. Shockley, 410 S.W.3d 179, 194 (Mo. banc 2013). However, the State's
argument fails to take into consideration that the State first raised Jackson's prior violence in its opening statement
when it told the jury that after Victim and Jackson began living together, their relationship had periods of "high
emotion and turbulence" during which Jackson would threaten Victim and her family and become violent. Jackson's
acknowledgement of this anticipated evidence in his opening statement, in response to the State's opening statement,
does not constitute a waiver of the argument raised on appeal, particularly as at the time of the opening statements,
Jackson knew (as we discuss, infra), that the trial court had denied his pre-trial motion in limine seeking to exclude
evidence of prior acts of violence at trial.

 11
 Victim was the State's first witness at trial. Victim testified that she met Jackson in

2013 or 2014, and began living with Jackson in June 2014. The State asked Victim,

"Before moving in together around June of 2014, had [Jackson] ever hit you?" Before she

answered, Jackson's counsel approached the bench and said:

 Your Honor, I know the Court's already ruled on this, [but] I just want to
 make sure that I preserved the objection. I do continue to object to the State
 eliciting testimony regarding prior incidents of domestic violence between
 [Victim] and Mr. Jackson. I make this objection pursuant to Mr. Jackson's
 equal protection, due process, and impartial jury rights pursuant to the United
 States Constitution and its provisions in the state constitution.

The trial court responded, "Okay. Your objection is overruled." Thereafter, as Victim

testified about Jackson's prior acts of violence, Jackson objected on some, but not every,

occasion on the basis raised in the motion in limine. Although Jackson's request for a

continuing objection could have been clearer, his aforesaid objection was sufficient to

permit the conclusion that it was Jackson's intent to object on a continuing basis to all

testimony from Victim about Jackson's prior acts of violence. And in any event, Jackson

did object on more than one occasion in response to the State's questions about his prior

abuse of Victim. We therefore elect to treat Jackson's second point on appeal as preserved

for our review. See State v. Burroughs, 627 S.W.3d 69, 74 (Mo. App. E.D. 2021).

 We review the decision to admit or exclude evidence at trial for abuse of discretion.

State v. Gibbons, 629 S.W.3d 60, 83 (Mo. App. W.D. 2021). "A trial court abuses its

discretion when its 'ruling admitting or excluding evidence is clearly against the logic of

the circumstances then before the court and is so unreasonable and arbitrary that it shocks

the sense of justice and indicates a lack of careful, deliberate consideration." State v.

 12
Ratliff, 622 S.W.3d 736, 744 (Mo. App. W.D. 2021) (quoting State v. Loper, 609 S.W.3d

725, 731 (Mo. banc 2020)). Evidentiary error alone will not require reversal, though; the

appellant must have suffered prejudice as a result of the admission of the evidence.

Gibbons, 629 S.W.3d at 83. "Trial court error in the admission of evidence is prejudicial

if the error so influenced the jury that, when considered with and balanced against all of

the evidence properly admitted, there is a reasonable probability that the jury would have

reached a different conclusion without the error." Id. (quoting State v. Suttles, 581 S.W.3d

137, 145 (Mo. App. E.D. 2019)).

 Jackson identifies several discrete instances at trial where Victim testified about

prior uncharged abuse by Jackson. Jackson claims that on each occasion, the evidence

should have been excluded as inadmissible propensity evidence, or as more prejudicial than

probative if offered for any other purpose.

 We disagree. Victim testified that "the first time [Jackson] ever hit [her] was a

couple weeks after [they] had moved in together," and that they were having an argument

when "he hit [her] in the face." Victim testified that on a number of occasions, Jackson

punched her in the face, spit on her, kicked her, choked her, and drug her by the hair. When

asked about threats Jackson made during their relationship, Victim testified that on one

occasion, Jackson threatened to rape Victim's sister. Victim testified that fights with

Jackson would happen about very three months, and that she "[didn't] even have to be doing

anything for him to get upset."

 Victim described an incident where Jackson forcibly drug her down the stairs by her

hair and her foot in front of her children. Victim explained that she then obtained an order

 13
of protection against Jackson to protect herself and her children. Jackson then objected to

the State eliciting testimony regarding any additional acts of domestic violence on the

grounds that the testimony would be duplicative and cumulative. The trial court overruled

the objection. Victim then testified about returning to her home one morning to find

Jackson inside, notwithstanding the order of protection. According to Victim, Jackson

immediately took her phone so she could not call the police.

 Victim testified about an incident in 2015 during which Jackson drove Victim to her

workplace in Kansas at a time when she was pregnant. Victim testified that the two argued

about which route to take to avoid a detour, and that Jackson punched Victim with a closed

fist multiple times on the side of her face so that her head hit the passenger side window.

Victim testified that she arrived late to work, and her supervisor immediately asked what

happened because her face had turned blue and purple. At the urging of her supervisor,

Victim called the local police to report the incident. Victim testified that, over the course

of her relationship with Jackson, she had obtained more than two orders of protection

against Jackson, but that never kept him away from her.

 Next, the State asked Victim about other abuse she suffered. Victim testified about

Jackson's response when she is not in the mood for sex. Jackson objected on the basis that

such incidents were inadmissible prior uncharged acts. The State explained that it intended

to have Victim testify about prior sexual encounters she had with Jackson that were not

consensual in order to establish that Victim knew, based on experience, that Jackson would

force her to have sex even if she refused and, thus, to establish Victim's mindset on the date

of the crime. The trial court asked if Victim's testimony on the subject would be general

 14
or about specific incidents. The State responded that Victim would generally testify about

nonconsensual sexual encounters she had with Jackson, and the trial court overruled the

objection. Victim then testified that on occasions when she refused to have sex with

Jackson, she would "get punched around."

 Jackson alleges on appeal that Victim's testimony constituted inadmissible

propensity evidence. "[P]ropensity evidence is evidence of uncharged crimes, wrongs, or

acts used to establish that [a] defendant has a natural tendency to commit the crime

charged." State v. Garretson, 598 S.W.3d 643, 653 (Mo. App. W.D. 2020) (quoting State

v. Boss, 577 S.W.3d 509, 519 (Mo. App. W.D. 2019)). The general rule is that uncharged

crimes, wrongs, or acts are not admissible for the purpose of showing the defendant's

propensity to commit such crimes. State v. Paine, 631 S.W.3d 691, 695 (Mo. App. W.D.

2021). We exclude evidence of prior uncharged crimes, wrongs, or acts in order to prevent

the jury from "us[ing] the evidence of the uncharged crime to infer the defendant has a

general criminal disposition, a bad character, or propensity or proclivity to commit the type

of crime charged," and in turn, "basing a finding of guilt on the uncharged crime." State v.

Thomas, 628 S.W.3d 686, 691 (Mo. App. E.D. 2021) (quoting State v. Mosely, 599 S.W.3d

236, 243 (Mo. App. W.D. 2020)).

 While evidence of uncharged crimes, wrongs, or acts is not admissible to establish

the defendant's propensity to commit the crime for which he is charged, such evidence may

be admissible for other purposes. State v. Brammer, 614 S.W.3d 18, 28 (Mo. App. E.D.

2020). In other words, evidence of uncharged crimes, wrongs, or acts may be admissible

if otherwise logically and legally relevant. Thomas, 628 S.W.3d at 691. Evidence is

 15
logically relevant if it tends to make the existence of a material fact more or less probable.

Id. Evidence of uncharged crimes, wrongs, or acts may be logically relevant to establish

the defendant's motive, intent, absence of mistake or accident, identity, or common scheme;

" a complete and coherent picture of the circumstances and events surrounding the charged

crime"; or any other material fact. Id. at 691-92 (quoting State v. Coleman, 580 S.W.3d

11, 13 (Mo. App. E.D. 2019)). If evidence of uncharged crimes, wrongs, or acts tends to

prove something other than the defendant's propensity to commit the crimes for which he

is charged, then the question becomes whether the evidence is legally relevant. Id. at 691.

Evidence is legally relevant if its probative value outweighs its costs--"unfair prejudice,

confusion of the issues, misleading the jury, undue delay, waste of time, or

cumulativeness." Id. (quoting State v. Anderson, 76 S.W.3d 275, 276 (Mo. banc 2002)).

"In balancing the probative value of evidence against its potential prejudicial effect on the

jury, 'the trial court must carefully consider that ‘the inevitable tendency of such evidence

is to raise a legally spurious presumption of guilt in the minds of the jurors.'" Id. at 692

(quoting State v. Nelson, 178 S.W.3d 638, 644 (Mo. App. E.D. 2005)).

 Jackson argues that Victim's testimony chronicling prior uncharged acts of abuse

was not logically relevant for any other purpose than to show Jackson's propensity to

commit the crimes for which he was charged. Jackson's argument fails to appreciate,

however, that logical relevance is a "very low-level test that is easily met." Id. at 691

(quoting State v. Banks, 582 S.W.3d 919, 924-25 (Mo. App. E.D. 2019)). Victim's

testimony about prior uncharged abuse was probative on the issue of consent, i.e., whether

Jackson used forcible compulsion to have sexual intercourse with Victim. Section

 16
566.030.1 ("A person commits the offense of rape in the first degree if he or she has sexual

intercourse with another person who is incapacitated, incapable of consent, or lacks the

capacity to consent, or by the use of forcible compulsion."); State v. Houston, 467 S.W.3d

894, 899 (Mo. App. E.D. 2015) ("Lack of consent is an element of rape and attempted rape,

and thus evidence tending to prove whether Victim consented to the sexual activity is

logically and legally relevant to the crime charged.").

 Victim's testimony about Jackson's prior uncharged acts of abuse also gave a

"complete and coherent picture of the events that transpired" on January 27, 2019, or the

"res gestae." See State v. Primm, 347 S.W.3d 66, 7 1 (Mo. banc 2011) ("[E]vidence of

uncharged crimes may be admissible to provide the trier-of-fact with a 'complete and

coherent picture of the events that transpired.'" (quoting State v. Harris, 870 S.W.2d 798,

810 (Mo. banc 1994))). Res gestae evidence includes evidence of:

 [t]hings done, or . . . the facts of the transaction; . . . the surrounding facts of
 a transaction explanatory of an act or showing a motive for acting; . . . matters
 incidental to a main fact and explanatory of it, including acts and words
 which are so closely connected with a main fact as will constitute a part of it,
 and without knowledge of which the main fact might not be properly
 understood.

State v. Smith, 353 S.W.3d 100, 105 (Mo. App. W.D. 2011) (quoting State v. Davis, 226

S.W.3d 167, 170 (Mo. App. W.D. 2007)). In particular, "[e]vidence of prior bad acts may

be admissible to explain a witness's delay in reporting a matter to the police." See State v.

Miller, 372 S.W.3d 455, 474 (Mo. banc 2012). Victim's testimony describing the prior

uncharged acts of abuse she suffered by Jackson gave context for her decision to lie in bed

with Jackson for one to two hours before calling the police to report what happened,

 17
explaining that Victim's delay was motivated by her fear of Jackson. See id. ("The evidence

of physical abuse toward [the victim's] mother and brothers does tend to give a 'complete

and coherent picture of the events that transpired,' more specifically why [the victim] did

not speak up earlier about the abuse that had been going on for eight years.").

 Jackson argues that even if the evidence of prior bad acts was logically relevant for

a purpose other than to show his propensity to commit the crimes of which he was charged,

the evidence should nonetheless have been excluded because its probative value was

outweighed by its potential for prejudice. See Thomas, 628 S.W.3d at 692. Jackson argues

that Victim's testimony describing the events of January 27, 2019, "was entirely sufficient

to establish that Mr. Jackson engaged in forcible compulsion and that [Victim] resisted, did

not comply with his requests, and called the police as soon as possible" so that Victim's

testimony about prior uncharged instances of abuse by Jackson was "not necessary" to

show why Victim felt compelled to engage in sexual intercourse with Jackson. [Appellant's

Brief, p. 37] Jackson also asserts that Victim's testimony describing prior uncharged

instances of abuse was highly prejudicial, as the testimony "was rife with inflammatory

details," including that Jackson abused Victim while she was pregnant, Jackson stole

Victim's phone to prevent her from calling the police, and Jackson threatened sexual

violence against members of Victim's family. [Id.]

 Jackson's argument that Victim's testimony about prior abuse was "not necessary"

to establish forcible compulsion, and was highly inflammatory, is not persuasive. Our

"standard of review affords great deference to the trial court's assessment of whether

evidence is legally relevant." State v. Kelly, 604 S.W.3d 672, 680 (Mo. App. W.D. 2020)

 18
(quoting State v. Clover, 924 S.W.2d 853, 856 (Mo. banc 1996)). The trial court is in a

better position to assess the possible prejudicial effect of evidence against the evidence's

probative value, a determination that necessarily requires the trial court "to consider and

understand the circumstances within the trial." Id. (quoting Clover, 924 S.W.2d at 856).

Given that a victim's lack of consent to sexual intercourse is an essential element of rape,

evidence that tended to prove that Victim did not consent to sexual activity with Jackson

on January 27, 2019, is highly probative to the ultimate question before the jury. Section

566.030; Houston, 467 S.W.3d at 899. We cannot conclude that the trial court abused its

discretion in concluding that the probative value outweighed the potential prejudice to

Jackson.

 Point Two is denied.

Point Three: Instruction No. 6

 Jackson's third point on appeal argues that the trial court committed error in

submitting Instruction No. 6, which explained how the jury could consider evidence of

prior uncharged acts of abuse by Jackson. Instruction No. 6, based on MAI-CR 4th 410.10

and modified by State v. Primm, 347 S.W.3d 66, 70 (Mo. banc 2011), instructed the jury

as follows:

 The defendant is on trial only for the offenses charged. You may not find
 the defendant guilty only because you believe he may have been involved in
 or committed other offenses or bad acts in the past.

 If you find and believe from the evidence that the defendant previously was
 involved in or committed other offenses or bad acts, you may consider such
 evidence only for the purposes stated in this instruction.

 19
 If you find a [sic] believe from the evidence that defendant was convicted of
 the offense of domestic battery, you may consider that evidence for the
 purpose of deciding the believability of the defendant and the weight to be
 given to his testimony.

 If you find and believe from the evidence that the defendant previously
 committed other bad acts, other than the offenses for which he is now on trial
 and the offense listed in the preceding paragraph, you may consider that
 evidence only to the extent that it presents a complete and coherent picture
 of the events that transpired.

Jackson objected at trial about the inclusion of the final paragraph in Instruction No. 6.

Jackson repeats that objection on appeal, claiming that because his prior bad acts did not

occur close in time to the crimes for which he was being prosecuted, the prior bad acts

were not part of the "complete and coherent picture of the events that transpired," and the

jury should not have been instructed to consider Victim's testimony for that purpose.

 "We review claims of instructional error de novo to determine whether the

instruction was supported by the law and the evidence." State v. Ganaway, 624 S.W.3d

361, 367 (Mo. App. E.D. 2021). Reversal for instructional error is appropriate if "the

instruction misled, misdirected or confused the jury, and resulted in prejudice" to the

defendant. Id. An instructional error is not prejudicial unless the error deprived the

defendant of a fair trial. State v. Cruz-Basurto, 581 S.W.3d 51, 56 (Mo. App. W.D. 2019).

 We have already explained that evidence of Jackson's prior abuse of Victim was in

part admissible to explain Victim's delay in contacting the police. And we have explained

that evidence admitted for that purpose is relevant because it helps to provide a complete

and coherent picture of the events that transpired. See Miller, 372 S.W.3d at 474 ("The

evidence of physical abuse toward [the victim's] mother and brothers does tend to give a

 20
'complete and coherent picture of the events that transpired,' more specifically why [the

victim] did not speak up earlier about the abuse that had been going on for eight years.")

Because the evidence of Jackson's prior abuse of Victim was properly admitted for this

purpose, it was not legally erroneous to include the last paragraph in Instruction No. 6.

 Point Three is denied.

Point Four: Prior Assault Offender Finding

 In his final point on appeal, Jackson argues that there was insufficient evidence

presented at trial for the trial court to conclude that Jackson is a prior assault offender.

Jackson asserts that the evidence did not establish beyond a reasonable doubt that his prior

conviction in Kansas for "domestic battery" would have constituted an "assault offense,"

as the term is defined in section 565.079.1(1), if he would have committed it in Missouri.

 Our review of a challenge to the sufficiency of the evidence to support a criminal

conviction is limited to determining "whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." State v. Alvarez, 628 S.W.3d 400, 413

(Mo. App. W.D. 2021) (quoting State v. Zetina-Torres, 482 S.W.3d 801, 809 (Mo. banc

2016)). In doing so, we accept all evidence and reasonable inference in favor of the

conviction as true, and ignore all evidence and inferences contrary to the conviction. Id.

We do not reweigh the evidence on appeal. Id.

 Section 565.079.13 requires the trial court to "sentence a person who has been found

to be a prior assault offender and is found guilty of a class B, C, or D felony under this

chapter to the authorized term of imprisonment for the class one class step higher than the

 21
offense for which the person was found guilty." A "prior assault offender" is statutorily

defined as "a person who has been found guilty of one assault offense, where such prior

offense occurred within five years of the occurrence of the assault offense for which the

person is charged." Section 565.079.1(3). Section 565.079.1(1) enumerates the following

offenses as "assault offenses":

 [M]urder in the first degree, murder in the second degree, voluntary
 manslaughter, involuntary manslaughter in the first degree, assault in the first
 degree, assault in the second degree, assault in the third degree, assault in the
 fourth degree, domestic assault in the first degree, domestic assault in the
 second degree, domestic assault in the third degree, domestic assault in the
 fourth degree, or an attempt to commit any of these offenses, or the
 commission of an offense in another jurisdiction that if committed in this
 state would constitute the commission of any of the listed offenses

Jackson was found guilty of domestic assault, a class D felony under Chapter 565, in the

instant case, and Jackson concedes that he was found guilty of domestic battery in Kansas.

Jackson's argument concerns whether his 2015 Kansas domestic battery conviction

constitutes an "assault offense" as to render him a prior assault offender.

 Jackson first asserts that the elements of "domestic battery" set forth in section 21-

5414 of the Kansas Statutes Annotated do not correspond to the elements of any of the

"assault offenses" enumerated in section 565.079.1(1). We rejected a similar argument in

State v. Hill, 839 S.W.2d 605 (Mo. App. W.D. 1992), where the defendant claimed error

in sentencing him as a persistent sexual offender because his prior offense was assault with

intent to commit rape in violation of a federal statute whose elements did not correspond

with a Missouri statute. Id. at 608. We held that "the elements of the foreign statute need

not correspond to the elements of the crimes which are enumerated in [section] 558.018[,

 22
RSMo 1986,] in order to trigger the application of that statute." Id. (citing State v. Kelly,

728 S.W.2d 642, 648 (Mo. App. S.D. 1987)). Instead, "the test is whether the acts

committed during the commission of a foreign crime would constitute the commission of

one of the crimes mentioned in [section] 558.018[, RSMo 1986]." Id. (citing Kelly, 728

S.W.2d at 648).

 Jackson next argues that there was insufficient evidence presented at trial to

conclude that Jackson committed acts in Kansas that would have constituted an "assault

offense" if those same acts were committed in Missouri. We disagree. The certified

records considered by the trial court established that Jackson pleaded guilty to domestic

battery in violation of section 21-5414 of the Kansas Statutes Annotated. Victim testified

about the incident that led to the Kansas conviction when she described Jackson's assault

in the car while driving her to work in Kansas. Victim testified that Jackson punched her

with a closed fist multiple times on the side of her face so that her head hit the passenger

side window, resulting in facial bruising and a black eye.

 Assault in the fourth degree occurs when a person "attempts to cause or recklessly

causes physical injury, physical pain, or illness to another person." Section 565.056.1(1).

By repeatedly punching Victim's face, resulting in bruising and a black eye, Jackson's

actions, at the very least, recklessly caused physical injury and physical pain to Victim.

Jackson's actions would have supported a conviction of assault in the fourth degree in

Missouri, an "assault offense" pursuant to section 565.079. Sufficient evidence supported

the trial court's finding that Jackson was a prior assault offender based on the Kansas

conviction for domestic battery.

 23
 Point Four is denied.

 Conclusion

 The Judgment is affirmed.4 However, we remand this matter to the trial court with

instructions to correct the Judgment to reflect that Jackson was found to be a prior assault

offender, instead of a persistent assault offender.

 Cynthia L. Martin, Judge

All concur

 4
 In its brief, the State complains in a footnote that we should review for plain error the sentences imposed
on Jackson because the trial court erred by ordering the victim tampering and violations of an order of protection
sentences to run concurrent with the first-degree rape sentence, in violation of section 558.026.1(1) & (5). The State
did not file a cross-appeal to raise this claim of sentencing error, though it would have been permitted to do so
pursuant to section 547.200.2. The State's contention is not preserved for appellate review. "The general rule of
appellate procedure is that, in the absence of a cross-appeal, the reviewing court is concerned only with the
complaint of the party appealing and that the opposing party who filed no appeal will not be heard to complain of
any portion of the trial court's judgment adverse to him." Goldberg v. State Tax Comm'n, 618 S.W.2d 635, 642 (Mo.
1981). In any event, the State's unpreserved contention is without merit, as Jackson's conduct giving rise to the
charges for victim tampering and violations of an order of protection occurred well after his rape of Victim, and thus
not "during or at the same time as" his first-degree rape of Victim. See section 558.026.1(1).

 24